Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000077
29-APR-2020
08:32 AM

NO. CAAP-19-0000077
(Consolidated with NO. CAAP-16-0000663)


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


**CAAP-19-0000077**
KENNETH M. SKAHAN, Claimant-Appellant-Appellant,
v.
STUTTS CONSTRUCTION COMPANY, INC., Employer-Appellee-Appellee,
and
FIRST INSURANCE COMPANY OF HAWAII, LTD.,
Insurer-Appellee-Appellee

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(AB2015-374(M) and DCD NO. 7-14-45105)

and

**CAAP-16-0000663**
KENNETH M. SKAHAN, Claimant-Appellant-Appellant,
v.
STUTTS CONSTRUCTION COMPANY, INC.,
Employer-Cross-Appellant-Appellee, and
FIRST INSURANCE COMPANY OF HAWAII, LTD.,
Insurer-Cross-Appellant-Appellee


APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(AB2014-019(WH) and DCD NO. 9-04-45072(M))


SUMMARY DISPOSITION ORDER
(By: Chan, Presiding Judge, Hiraoka and Wadsworth, JJ.)

These consolidated appeals arise from workers'
compensation claims made by self-represented Claimant-Appellant-
Appellant Kenneth M. Skahan (**Skahan**).

In **CAAP-16-0000663**, Skahan appeals from the following
orders entered by the Hawai'i Department of Labor and Industrial
Relations' Appeal Board (**LIRAB**) in AB 2014-019:

**(1)** the March 11, 2014 "Order Granting Employer's Motion for Stay of Payments";

**(2)** the June 21, 2016 "Decision and Order";

**(3)** the September 8, 2016 "Order Granting in Part Request for Reconsideration/Reopening"; and

**(4)** the October 21, 2016 "Order Denying Claimant's Motion for Temporary Remand."

In **CAAP-19-0000077**, Skahan appeals from the LIRAB's "Decision and Order" entered on January 3, 2019, in AB 2015-374.

For the reasons explained below, we affirm the LIRAB's decisions and orders.

## PROCEDURAL HISTORY

### The Original Claim

On November 30, 2004, Skahan, then in his late 40's, was working on Hawai‘i Island as a carpenter for Employer-Cross-Appellant-Appellee Stutts Construction Company, Inc. (**Stutts**). Skahan felt pain in his right rib cage while lifting a garage door. He immediately went to see his physician, Dr. Lora Aller. Dr. Aller diagnosed chest and thoracic strain, prescribed ibuprofen, and certified that Skahan was temporarily disabled from working.

Skahan continued to complain of pain and saw Dr. Aller again on December 7, 2004. Dr. Aller continued to keep Skahan off work and ordered x-rays of Skahan's thoracic spine and right ribs. X-rays were taken on December 8, 2004. Radiologist Lori Wilhelm, M.D. interpreted the thoracic spine x-rays as showing spurring at multiple levels, but no compression fractures. The right rib x-rays were normal. An MRI[1] of Skahan's thoracic spine was performed on January 10, 2005, and read by George Ainge, M.D. It showed small central disk protrusions at two levels, with no spinal cord compression or significant spinal stenosis.

---

[1] "MRI" is an acronym for *M*agnetic *R*esonance *I*maging, a medical imaging technique that uses a magnetic field and computer-generated radio waves to create detailed images of the organs and tissues in a human body. See MRI, Mayo Clinic, https://www.mayoclinic.org/tests-procedures/mri/about/pac-20384768 (last visited Apr. 24, 2020).

Stutts's workers' compensation insurer was Insurer-Cross-Appellant-Appellee First Insurance Company of Hawaii, Ltd. (**FICOH**). Stutts and FICOH (collectively, **Employer**) accepted liability for Hawai'i state workers' compensation benefits because of the November 30, 2004 injury. After the statutory waiting period, Employer began paying temporary total disability (**TTD**) benefits to Skahan. On August 5, 2005, Dr. Aller released Skahan to return to work effective August 8, 2005.

By letter dated September 20, 2005, Employer informed Skahan that his TTD benefits would end on October 4, 2005, because he had been released to return to work. Skahan requested an administrative hearing. The Hawai'i Department of Labor and Industrial Relations' Disability Compensation Division (**DCD**) docketed the case as No. 9-04-45072 (the **2004 DCD Case**).

The DCD issued a decision on January 6, 2006. The DCD found that Employer's termination of Skahan's TTD benefits was proper based upon Dr. Aller's report.[2] The DCD reserved determination of permanent partial disability (**PPD**) and disfigurement for a later date. Skahan did not appeal that decision.

### The Supplemental Claim

Nothing connected to the 2004 DCD Case appears to have happened for more than 6 years.[3] Then, by letter dated June 27, 2012, Skahan informed Employer that he had moved to the island of Maui and re-injured his back. By letter dated August 9, 2012, Employer asked Skahan to be examined by Stephen A. Kaneshiro, M.D., an orthopedic surgeon. Skahan declined. He applied for another DCD hearing. The DCD reopened the 2004 DCD Case.

---

[2] The DCD also found that Employer was entitled to a credit for one day's overpayment of TTD benefits.

[3] It appears from the record that Skahan had pre-existing low back injuries from two previous industrial accidents, for which he underwent surgery in 1993. In July 2006, Skahan suffered a heart attack and underwent aortic valve replacement due to a congenital heart condition. By 2009, Skahan was unemployed; he applied for but was denied social security disability benefits. In 2010, Skahan suffered from sleep apnea and chronic kidney disease; in 2011, he was diagnosed with and treated for carpal tunnel syndrome; in June 2012, he was awarded social security disability benefits retroactive to 2010. In June 2012, Skahan underwent a second heart surgery to replace an implanted defibrillator. Skahan's June 12, 2012 injury occurred shortly after he was discharged from the hospital.

On May 31, 2013, the DCD ordered Skahan to be examined by Lorne K. Direnfeld, M.D., a neurologist who is board-certified in neurology and psychiatry. Dr. Direnfeld prepared a report dated July 19, 2013. He opined that Skahan's reported persistent thoracic and right chest symptoms were likely the result of diffuse idiopathic skeletal hyperostosis (**DISH**).[4] Dr. Direnfeld opined:

> Just as the 11/30/04 industrial accident appears to have resulted in a permanent aggravation of a pre-existing asymptomatic or minimally symptomatic condition, the incident of 6/12 may represent a non-work-related symptomatic aggravation of a pre-existing chronic progressive condition.

In a supplemental report dated August 30, 2013, Dr. Direnfeld responded to Skahan's criticism of his July 19, 2013 report:

> Mr. Skahan's statement that I attribute the "cause" of his [November 30, 2004] injury to DISH is not correct.

---

[4] According to The Spine Hospital at The Neurological Institute of New York (part of the Columbia University College of Physicians and Surgeons):

> [DISH] is a form of arthritis that involves the tendons and ligaments around the spine. Also known as Forestier's disease, this condition occurs when these tendons and ligaments become hardened, a process known as calcification. Once the tendons and ligaments harden, parts of these tissues can turn into bone. This usually occurs where the tissue connects with the bone. As a result, bone spurs develop, which is an outgrowth of bone that develop along the edges of a bone.
>
> DISH commonly affects the upper part of the back and neck, known as the thoracic and cervical spine. . . .
>
> . . . .
>
> DISH may or may not cause symptoms.
>
> . . . .
>
> Although the cause of DISH is unknown, there are certain risk factors that are thought to increase the risk for DISH. These include:
>
> . . . .
>
> • Older age: Since DISH is a type of arthritis, DISH typically affects an older population.
>
> • Male gender[.]

See Diffuse Idiopathic Skeletal Hyperostosis (DISH), The Spine Hospital at the Neurological Institute of New York, https://www.columbiaspine.org/condition/diffuse-idiopathic-skeletal-hyperostosis-dish/ (last visited Apr. 24, 2020).

4

Mr. Skahan's work-related activities on 11/30/04 caused the pre-existing, reportedly asymptomatic [condition] of DISH to become symptomatic.

In the Causation section of my report of 7/19/13 (on page 46), I noted the primary diagnosis in Mr. Skahan's case is DISH. I stated this pre-existing chronic progressive condition reportedly became symptomatic as a result of activities performed by Mr. Skahan in the course of his work on 11/30/04.

. . . .

Mr. Skahan states the report of x-rays of the thoracic spine obtained on him at Hawaii Radiologic Associates on 12/8/04 makes no mention of DISH. In addition, he said that the findings on those films do not meet the criteria for DISH. The basis for Mr. Skahan's opinion in this regard is unknown.

. . . .

On 8/29/13 I contacted Dr. Lori Wilhelm, the radiologist at Hawaii Radiologic Associate [sic], who read the plain x-rays of the thoracic spine obtained on Mr. Skahan on 12/8/04.

. . . .

I asked Dr. Wilhelm, based on her review of the report she wrote concerning those x-rays, whether those films would be regarded as demonstrating findings of DISH.

As noted in my report of 7/19/13, Dr. Wilhelm had stated in her report of these films the vertebrae were normal in height and alignment. There were small endplate spurs anteriorly at most levels, but more prominent spurring was present at the T7-8 and T9-10 levels. The disc spaces were well-preserved. There was mild left T11 costovertebral spurring.

Dr. Wilhelm stated that the findings she documented on those x-rays would meet the criteria for the diagnosis of DISH.

Dr. Wilhelm spontaneously indicated that she did not use the term DISH in her report because, in her experience, when she does so, many physicians are not familiar with this term and she ends up having to field calls from physicians about the meaning of this term.

This data indicates that Mr. Skahan had imaging findings consistent with the diagnosis of DISH present at the time of the 11/30/04 industrial accident.

Activities performed by Mr. Skahan in the course of his work on 11/30/04 resulted in the development of symptoms associated with this pre-existing condition.

. . . .

The mechanism of the incident which occurred on 6/12 resulted in a recurrence or worsening of pre-existing symptoms which represents a non-work-related symptomatic aggravation of a pre-existing chronic progressive condition (DISH) in Mr. Skahan's case.

On January 15, 2014, the DCD issued a supplemental decision. The DCD found that in June 2012 Skahan was walking in the ocean, stepped in a hole, and experienced immediate pain in his upper spine. The DCD considered medical records and reports from Drs. Daniel A. Capen and Direnfeld, and from Marcia Berkowitz, a certified rehabilitation counselor, among others. Quoting a report by Dr. Direnfeld, the DCD found that the incident in the ocean caused "a non-work-related symptomatic aggravation of [a] pre-existing chronic progressive condition when [Skahan] inadvertently stepped down a 6-inch drop while walking in thigh-high water." The DCD·ruled that Skahan was not entitled to the massage therapy treatment plan proposed by Dr. Capen, but was entitled to vocational rehabilitation, and to additional TTD benefits while he remained enrolled in vocational rehabilitation. The DCD also determined that Skahan sustained an 8% permanent partial disability as a result of the November 30, 2004 industrial accident and — based upon the parties' agreement — that no disfigurement resulted from Skahan's injury.

Skahan appealed to the LIRAB on January 20, 2014. Employer filed a notice of cross-appeal on January 24, 2014. The LIRAB docketed the appeal as AB 2014-019. On January 27, 2014, Employer filed a motion to stay enforcement of the DCD's January 15, 2014 supplemental decision pending a decision by the LIRAB. By order entered on March 11, 2014, the LIRAB granted Employer's motion for stay.[5]

On June 21, 2016, the LIRAB issued its "Decision and Order" (**2016 D&O**). The LIRAB found and concluded that: Skahan's thoracic spine symptoms after the June 12, 2012 ocean incident were causally related to the November 30, 2004 work injury; Skahan was entitled to vocational rehabilitation services; Skahan was entitled to TTD benefits from November 16, 2012 to April 19, 2013, and from August 8, 2013 to October 15, 2013, while enrolled

---

[5] Skahan appealed from the LIRAB order granting Employer's motion to stay TTD benefits. His appeal was docketed as CAAP-14-0000850. By order entered on October 3, 2014, we dismissed Skahan's appeal for lack of appellate jurisdiction. Skahan applied to the supreme court for a writ of certiorari. His application was rejected.

in vocational rehabilitation; and Skahan was not permanently totally disabled, but was 8% permanently partially disabled.

On July 14, 2016, Skahan moved for reconsideration or reopening. On September 8, 2016, the LIRAB issued its "Order Granting in Part Request for Reconsideration/Reopening." The LIRAB considered new evidence submitted by Skahan, but did not change the substance of the 2016 D&O. On October 7, 2016, Skahan filed the notice of appeal that resulted in **CAAP-16-0000663**.

On October 11, 2016, Skahan filed a motion with the LIRAB for a temporary remand to the DCD. On October 21, 2016, the LIRAB entered the "Order Denying Claimant's Motion for Temporary Remand." Skahan filed a notice of appeal from that order on November 17, 2016, as part of CAAP-16-0000663.

### The New Claim

Meanwhile, on June 10, 2014 (while Skahan's appeal to the LIRAB from the DCD's January 15, 2014 supplemental decision was pending), Skahan filed a third claim for workers' compensation benefits because of the June 12, 2012 incident (when he stepped into a hole while walking in the ocean).[6] He also submitted a complaint alleging fraud by Employer. The DCD docketed the cases as Nos. 7-14-45105 and 9-14-45010 (the **2014 DCD Cases**). A hearing was set for July 8, 2015. The DCD issued its decision on September 16, 2015. The DCD found that: Skahan's last day of work for Stutts was December 3, 2004; Skahan was not working for Stutts when he was injured on June 12, 2012; and there was no evidence that Employer committed a fraudulent act.

---

[6] On August 19, 2013, Skahan filed a second claim for workers' compensation benefits against Stutts, for injuries to his lower back and thoracic spine that he claimed became disabling on April 7, 2013. On January 10, 2014, the DCD issued a decision denying the claim because Skahan was not employed by Stutts on the claimed date of injury. Skahan appealed to the LIRAB. The appeal was docketed as AB 2014-41. The LIRAB found that Skahan's claim for thoracic spine injury was causally related to the November 30, 2004 work injury, and was not a claim for a new injury occurring on April 7, 2013. The LIRAB concluded that any benefits for the thoracic spine injury should be determined under Skahan's separate claim for the November 30, 2004 injury (which is the subject of this appeal). The LIRAB also concluded that Skahan's claimed low back injury was not causally related to the November 30, 2004 work incident, and denied Skahan's low back injury claim. Skahan appealed, and we affirmed. See Skahan v. Stutts Constr. Co., No. CAAP-16-0000664, 2020 WL 1663511 (Haw. App. Apr. 1, 2020) (SDO).

The DCD denied compensability and dismissed the claim of fraud. Skahan appealed to the LIRAB on September 18, 2015. The LIRAB docketed the appeal as AB 2015-374.

On January 3, 2019, the LIRAB entered its "Decision and Order" (**2019 D&O**). A majority of the LIRAB concluded that "the issue of the period of temporary disability for the DISH condition and any other injury/condition related to the June 12, 2012 incident should properly be determined under the [2014 LIRAB Appeal]" (which by then was on appeal to us as CAAP-16-0000663). The majority also held that "whether the Employer/Carrier . . . committed fraudulent insurance acts under §[§] 386-98(a)(8), (10), and (11), Hawaii Revised Statutes, should also be determined under the [2014 LIRAB Appeal]."

On January 28, 2019, Skahan filed the notice of appeal that resulted in **CAAP-19-0000077**. We consolidated these appeals on June 21, 2019.

## STANDARD OF REVIEW

Appellate review of a LIRAB decision is governed by Hawaii Revised Statutes (**HRS**) § 91-14(g) (2012). <u>Panoke v. Reef Dev. of Haw., Inc.</u>, 136 Hawaiʻi 448, 460, 363 P.3d 296, 308 (2015). The statute provides:

> Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1)     In violation of constitutional or statutory provisions; or
>
> (2)     In excess of the statutory authority or jurisdiction of the agency; or
>
> (3)     Made upon unlawful procedure; or
>
> (4)     Affected by other error of law; or
>
> (5)     Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6)     Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under sub-section (5); and an agency's exercise of discretion under subsection (6)." Del Monte Fresh Produce (Hawaii), Inc. v. International Longshore and Warehouse Union, Local 142, 128 Hawai'i 289, 302, 287 P.3d 190, 203 (2012) (citations omitted).

> A court reviewing an agency's decision cannot consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the finding of an expert agency in dealing with a specialized field.

Sierra Club v. D.R. Horton-Schuler Homes, LLC, 136 Hawai'i 505, 522, 364 P.3d 213, 230 (2015) (cleaned up).

## DISCUSSION

Skahan asserts 46 points of error in CAAP-16-0000664 and 13 points of error in CAAP-19-0000077. We construe Skahan's points of error to challenge the LIRAB's: (a) March 11, 2014 "Order Granting Employer's Motion for Stay of Payments"; (b) June 21, 2016 "Decision and Order"; (c) September 8, 2016 "Order Granting in Part Request for Reconsideration/Reopening"; (d) October 21, 2016 "Order Denying Claimant's Motion for Temporary Remand"; and (e) January 3, 2019 "Decision and Order."

**A.    The LIRAB did not abuse its discretion by granting Employer's motion for stay of payments.**

Skahan contends that the LIRAB erred by granting Employer's motion to stay enforcement of the DCD's January 15, 2014 supplemental decision. We review the LIRAB's decision for abuse of discretion. See State v. Ranger Ins. Co., 83 Hawai'i 118, 123-24, 925 P.2d 288, 293-94 (1996) (applying abuse of discretion standard of review to circuit court's order denying stay of execution of bail forfeiture). "An abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Kobashigawa v.

9

Silva, 129 Hawai‘i 313, 320, 300 P.3d 579, 586 (2013) (cleaned up).

Hawai‘i Administrative Rules (**HAR**) § 12-47-34 authorizes the LIRAB to stay a decision by the DCD. Skahan's opening brief argues: "In a memorandum in opposition to the Employer's motion for Stay of Payments, the Claimant offered legally correct reasons for denial of the Employer's motion. The Board granted the motion anyway." Skahan's reply brief incorporates by reference various memoranda he filed with the LIRAB, with no further argument. Skahan's briefs do not address the applicable standard of review by explaining why he contends the LIRAB abused its discretion by granting Employer's motion to stay. Our review of the record does not indicate that the LIRAB exceeded the bounds of reason or disregarded rules or principles of law or practice to Skahan's substantial detriment. The "Order Granting Employer's Motion for Stay of Payments" entered on March 11, 2014, in the 2014 LIRAB Appeal is affirmed.

**B.    The findings in the 2016 D&O are not clearly erroneous, and the conclusions reflect an application of the correct rule of law.**

Skahan challenges findings of fact nos. 1, 3, 5, 6, 7, 9, 12, 15, 16, 17, 19, 20, 23, 24, 25, 26, 27, 28, 29, 30, 32, 36, 38, 39, 40, 41, 42, 44, 45, 46, 47, 48, 53, 59, 62, 63, 64, 65, 66, and 67 in the 2016 D&O. The LIRAB's findings of fact are reviewable under the clearly erroneous standard. Panoke, 136 Hawai‘i at 460, 363 P.3d at 308. A finding of fact is clearly erroneous when the record lacks substantial evidence to support the finding or when, despite some evidence to support the finding, we are left with a definite and firm conviction in reviewing all of the evidence that a mistake has been made. Birano v. State, 143 Hawai‘i 163, 181, 426 P.3d 387, 405 (2018). "Substantial evidence" is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." In re Grievance Arbitration Between State of Haw. Org. of Police Officers, 135 Hawai‘i 456, 462, 353 P.3d 998, 1004 (2015) (citations omitted). In reviewing the LIRAB's findings of fact, we "cannot consider

the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the finding of an expert agency in dealing with a specialized field." Sierra Club, 136 Hawai'i at 522, 364 P.3d at 230 (cleaned up).

In this case, the LIRAB considered records and reports from Drs. Aller, Capen, Direnfeld, Wilhelm, Terry Smith, and Ronald Kienitz, and CRC Berkowitz. The LIRAB's findings of fact are supported by substantial evidence in the record,[7] and in reviewing all of the evidence we are not left with a definite or firm conviction that a mistake has been made.

Skahan also challenges conclusions of law nos. 1, 3, 4, 5, 6, and 7 in the 2016 D&O. The LIRAB's conclusions of law are freely reviewable to determine if the agency's decision was in violation of constitutional or statutory provisions, in excess of the statutory authority or jurisdiction of the agency, or affected by other error of law. Panoke, 136 Hawai'i at 460, 363 P.3d at 308. A conclusion of law that is supported by the findings of fact and reflects an application of the correct rule of law will not be overturned. Estate of Klink ex rel. Klink v. State, 113 Hawai'i 332, 351, 152 P.3d 504, 523 (2007). When a conclusion of law presents mixed questions of fact and law, we review it under the "clearly erroneous" standard because the conclusions of law are dependent on the facts and circumstances of each individual case. Id. When mixed questions of law and fact are presented we must give deference to the LIRAB's expertise and experience in its field; we are not to substitute our own judgment for that of the agency. Igawa v. Koa House Rest., 97 Hawai'i 402, 406, 38 P.3d 570, 574 (2001).

---

[7]     For example, the LIRAB found:

> 64.    The Board credits Dr. Direnfeld's impairment rating over that of Dr. Capen's rating for the reasons identified in Dr. Direnfeld's report. The Board found Dr. Direnfeld's opinions persuasive and credible.

In this case, the LIRAB's conclusions of law are supported by its findings of fact and reflect an application of the correct rule of law.  The LIRAB's 2016 D&O is affirmed.

### C.   The LIRAB did not abuse its discretion by granting Skahan's motion for reconsideration but declining to reopen his claim.

We review the LIRAB's decision on a motion for reconsideration for abuse of discretion.  Yadao v. State, 137 Hawai'i 162, 177, 366 P.3d 1041, 1056 (App. 2016).  A motion for reconsideration is not a way to relitigate old matters or to raise arguments that should have been made, or evidence that should have been offered, during an earlier proceeding; the purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented in an earlier hearing.  Id.

Skahan's motion for reconsideration requested that the LIRAB consider a follow-up report and treatment plan from Dr. Capen, dated April 7, 2016.  The LIRAB agreed to consider the report because it had not been prepared until after the LIRAB's November 6, 2015 briefing deadline for Skahan's original hearing, and could not have been presented during the original hearing.  The decision was clearly within the scope of the LIRAB's authority under HRS § 386-87(d) (2015) and HAR § 12-47-53, and was not an abuse of discretion.

After considering Dr. Capen's follow-up report — which included diagnoses relating to symptoms from, and treatment for, Skahan's prior low-back injuries unrelated to his November 30, 2004 thoracic and rib injury — the LIRAB concluded:

> Dr. Capen's report has no probative value to the issues on appeal.  At most, Dr. Capen questions Claimant's ability to "compete in the open labor market" because of his various diagnoses.  The Board does not credit such opinion to be determinative of whether Claimant is or is not able to work or participate in vocational rehabilitation and does not credit such opinion to be determinative of whether Claimant is or is not temporarily totally disabled or permanently totally disabled.

The LIRAB's conclusion presents a mixed question of fact and law, which we review under the "clearly erroneous" standard because

the conclusions of law are dependent on the facts and circumstances of the case. <u>Klink</u>, 113 Hawai'i at 351, 152 P.3d at 523. We must also give deference to the LIRAB's expertise and experience in the field of workers' compensation, and not substitute our own judgment for that of the LIRAB. <u>Igawa</u>, 97 Hawai'i at 406, 38 P.3d at 574.

The LIRAB's September 8, 2016 order is supported by substantial evidence in the record, including but not limited to the opinions of CRC Berkowitz and Dr. Direnfeld; in reviewing all of the evidence we are not left with a definite or firm conviction that a mistake has been made. The LIRAB's conclusions of law are supported by its findings of fact and reflect an application of the correct rule of law. Accordingly, the LIRAB's September 8, 2016 order granting Skahan's request for reconsideration but denying his request to reopen his claim is affirmed.

> **D.    The LIRAB did not have jurisdiction to remand this case to the DCD after Skahan filed the notice of appeal.**

On October 7, 2016, Skahan filed the notice of appeal that resulted in **CAAP-16-0000663**. On October 11, 2016, Skahan filed a motion with the LIRAB for a temporary remand to the DCD. The LIRAB entered the October 21, 2016 "Order Denying Claimant's Motion for Temporary Remand," denying the motion "for lack of jurisdiction." The LIRAB was correct because Skahan's filing of the October 7, 2016 notice of appeal divested the LIRAB of jurisdiction over the case. <u>See</u> <u>TSA Int'l Ltd. v. Shimizu Corp.</u>, 92 Hawai'i 243, 265, 990 P.2d 713, 735 (1999) ("Generally, the filing of a notice of appeal divests the trial court of jurisdiction over the appealed case.") (citations omitted).

> **E.    The findings in the 2019 D&O are not clearly erroneous, and the conclusions reflect an application of the correct rule of law.**

Skahan challenges finding of fact no. 1 in the 2019 D&O. The majority of the LIRAB found:

> 1. Claimant's claim for thoracic spine injuries and of fraud relate to a June 12, 2012 incident, which the Board

previously determined, in a prior Decision and Order, to be related to his November 30, 2004 work injury.

For the reasons discussed above, we affirmed the LIRAB's 2016 D&O, which found and concluded that Skahan's thoracic spine symptoms after the June 12, 2012 ocean incident were causally related to the November 30, 2004 work injury, that Skahan was entitled to vocational rehabilitation services, that Skahan was entitled to certain TTD benefits, and that Skahan was not permanently totally disabled, but was 8% permanently partially disabled. The LIRAB's finding of fact is consistent with its 2016 D&O, is supported by substantial evidence in the record, and in reviewing all of the evidence we are not left with a definite or firm conviction that a mistake has been made.

Skahan challenges conclusions of law nos. 1, 2, and 3 in the 2019 D&O. The majority of the LIRAB concluded:

> 1. Consistent with the Board's prior determinations in AB 2014-019(WH)(S) [i.e. the case underlying this appeal] and AB 2014-041(WH) [see note 6 above], both presently on appeal to the ICA, the Board concludes that Claimant's DISH injury as [sic] proximately caused by or resulted from the nature of his November 30, 2004 work injury. The Board concludes that a determination as to whether Claimant's other thoracic spine conditions related to the June 12, 2012 incident must and should be determined under the November 30, 2004 work injury.
>
> 2. Consistent with the Board's prior determinations in AB 2014-019(WH)(S) and AB 2014-041(WH), both presently on appeal to the ICA, the Board concludes that the issue of the period of temporary disability for the DISH condition and any other injury/condition related to the June 12, 2012 incident should properly be determined under the November 30, 2004 work injury.
>
> 3. The Board further concludes that whether the Employer/Carrier, and Ann Okabe, and Laurie E. Keeno, Esq. committed fraudulent insurance acts under §[§] 386-98(a)(8), (10), and (11), Hawaii Revised Statutes, should also be determined under the November 30, 2004 claim.

The LIRAB's conclusions of law are supported by its findings of fact and reflect an application of the correct rule of law. Accordingly, the LIRAB's 2019 D&O is affirmed.

## CONCLUSION

For the reasons explained above, the LIRAB's March 11, 2014 "Order Granting Employer's Motion for Stay of Payments,"

June 21, 2016 "Decision and Order," September 8, 2016 "Order Granting in Part Request for Reconsideration/Reopening," and October 21, 2016 "Order Denying Claimant's Motion for Temporary Remand" in AB 2014-019, and the LIRAB's January 3, 2019 "Decision and Order" in AB 2015-374, are affirmed.

DATED: Honolulu, Hawai'i, April 29, 2020.

On the briefs:

Kenneth M. Skahan,
Self-represented
Claimant-Appellant-Appellant.

Laurie E. Keeno,
for Employer-Cross-
Appellant-Appellee and
Insurer-Cross-Appellant-Appellee.

Shawn L.M. Benton,
for Employer-Appellee-Appellee
and Insurer-Appellee-Appellee.

/s/ Derrick H.M. Chan
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge